The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
April 18, 2019

## 2019COA55

**No. 17CA0102, *People v. Delgado* — Criminal Procedure —
Postconviction Remedies — Conviction Obtained or Sentence
Imposed in Violation of the Constitution; Attorneys and Clients
— Ineffective Assistance of Counsel**

A division of the court of appeals addresses whether the

district court erred in summarily denying defendant's Crim. P. 35(c)

postconviction motion based on ineffective assistance of counsel.  In

so doing, the division concludes that two United States Supreme

Court cases, *Lafler v. Cooper*, 566 U.S. 156 (2012), and *Missouri v.

Frye*, 566 U.S. 134 (2012), overruled the Colorado Supreme Court's

decision in *Carmichael v. People*, 206 P.3d 800 (Colo. 2009), on two

points: (1) the test for showing prejudice where an attorney

incorrectly advises a defendant in plea negotiations, resulting in the

defendant rejecting a plea offer; and (2) the remedies available

where a defendant in these circumstances shows both ineffective

assistance and prejudice. The division reverses the district court's order in part and remands the case for a hearing on defendant's claim that he received ineffective assistance of counsel because his attorney incorrectly advised him about his sentencing exposure.

COLORADO COURT OF APPEALS                                      **2019COA55**

Court of Appeals No. 17CA0102
Larimer County District Court No. 02CR1285
Honorable Julie Kunce Field, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Lupe Delgado,

Defendant-Appellant.

ORDER AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE J. JONES
Terry and Grove, JJ., concur

Announced April 18, 2019

Philip J. Weiser, Attorney General, Carmen Moraleda, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Katayoun A. Donnelly, Alternate Defense Counsel, Denver, Colorado, for
Defendant-Appellant

¶ 1    Defendant, Lupe Delgado, appeals the district court's order summarily denying his Crim. P. 35(c) motion based on ineffective assistance of counsel. We reverse the order in part and remand the case for a hearing on defendant's claim that his attorney incorrectly advised him about his sentencing exposure, leading him to reject a favorable plea offer. In so deciding, we conclude that the United States Supreme Court's decisions in *Lafler v. Cooper*, 566 U.S. 156 (2012), and *Missouri v. Frye*, 566 U.S. 134 (2012), overruled the Colorado Supreme Court's decision in *Carmichael v. People*, 206 P.3d 800 (Colo. 2009), on two points: (1) the test for showing prejudice where an attorney incorrectly advises a defendant in plea negotiations, resulting in the defendant rejecting a plea offer; and (2) the remedies available where a defendant in these circumstances shows both ineffective assistance and prejudice. Otherwise, we affirm.

## I.    Background

¶ 2    In 2002, the People charged defendant with aggravated incest and three counts of sexual assault on a child by one in a position of trust. He hired a private attorney to represent him in that case, but that attorney withdrew several months before trial. Defendant

couldn't pay another private attorney but didn't qualify for a public defender.  Although he repeatedly said that he wasn't qualified to represent himself and didn't want to proceed pro se, he went to trial without an attorney.  A jury convicted him of all charges.

¶ 3    The court appointed a public defender to represent defendant for sentencing.  According to defendant's Rule 35(c) motion, the attorney told him that the prosecutor had offered a fixed, ten-year sentence to the custody of the Department of Corrections (DOC), but the offer wasn't favorable since the maximum prison term he could get was fifteen years.[1]  Relying on this advice, defendant rejected the offer.  The court sentenced him to an indeterminate fifteen years to life sentence for aggravated incest and concurrent fifteen-year sentences on the other charges.  He appealed.

¶ 4    A division of this court reversed, holding that defendant's waiver of counsel was not knowing, voluntary, and intelligent.  A new trial ensued, after which a jury once again convicted defendant of all charges.  The court again sentenced defendant to an aggregate

---

[1] Defendant actually faced a maximum sentence of life in prison pursuant to the Colorado Sex Offender Lifetime Supervision Act of 1998.  *See* § 18-1.3-1004, C.R.S. 2018.

term of fifteen years to life in DOC custody.  He unsuccessfully appealed.

¶ 5     Defendant later filed a Crim. P. 35(c) motion, asserting ten claims of ineffective assistance of counsel and requesting a hearing on those claims.  The district court denied the motion without a hearing.

## II.     Discussion

¶ 6     We review a summary denial of a Rule 35(c) motion de novo. *People v. Gardner*, 250 P.3d 1262, 1266 (Colo. App. 2010).

¶ 7     To prevail on a claim of ineffective assistance of counsel under Rule 35(c), a defendant must show that (1) his attorney's performance was deficient and (2) the attorney's deficient performance prejudiced him.  *See Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *Dunlap v. People*, 173 P.3d 1054, 1062 (Colo. 2007).  An attorney's performance is deficient if it falls "below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.  To prove that such deficient performance prejudiced him, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  If the defendant establishes

those elements and meets all other requirements under Rule 35(c), the district court "shall make such orders as may appear appropriate to restore a right which was violated, such as vacating and setting aside the judgment, imposing a new sentence, granting a new trial, or discharging the defendant."  Crim. P. 35(c)(3).[2]

¶ 8      A defendant requesting postconviction relief under Rule 35(c) may be given a hearing to develop the record on his claims.  *See* § 18-1-401, C.R.S. 2018; *Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003).  But a court may deny the motion without a hearing if the motion, files, and record clearly establish that the defendant is not entitled to relief; if the allegations, even if true, don't provide a basis for relief; or if the claims are bare and conclusory in nature and lack supporting factual allegations.  *People v. Venzor*, 121 P.3d 260, 262 (Colo. App. 2005).

---

[2] One such remedy in the plea context includes permitting a defendant who pleaded guilty after being incorrectly or inadequately advised about the consequences of accepting a plea deal to withdraw his guilty plea.  *See, e.g., People v. Sifuentes*, 2017 COA 48M, ¶ 46 (requiring the district court to allow the defendant to withdraw his guilty plea after he met both *Strickland* prongs and proved he received ineffective assistance of counsel during the plea process).  This case involves the situation of a defendant rejecting a plea offer because of incorrect advice.

¶ 9    Defendant appeals the district court's summary denial of three of his claims: (1) counsel failed to correctly advise him about the possible sentence after the first trial; (2) counsel gave him unsound advice that he shouldn't testify in the second trial since he was guaranteed to succeed on appeal; and (3) counsel failed to investigate an aspect of the victim's past.[3] We address each in turn.

## A.    Plea Offer and Sentencing Advice

¶ 10    Defendant alleges that, after his first trial, but before sentencing, the prosecutor extended a "plea deal" of a determinate ten-year sentence to DOC custody. His public defender, who had been appointed to represent him at sentencing, told him of the offer but advised him that it wasn't favorable because the maximum prison sentence he could receive was fifteen years. Relying on this

---

[3] We deem abandoned, and won't address, the seven claims that defendant raised in his Rule 35(c) motion but didn't discuss on appeal. *See People v. Rodriguez*, 914 P.2d 230, 249 (Colo. 1996) (the defendant's "failure to specifically reassert on this appeal all of the claims which the district court disposed of . . . constitutes a conscious relinquishment of those claims"); *People v. Ortega*, 266 P.3d 424, 428 (Colo. App. 2011) ("We also deem abandoned any additional contentions which [the defendant] raised in his postconviction motion and which have not been pursued on appeal.").

5

advice, defendant declined the offer. He subsequently received an indeterminate sentence of fifteen years to life in DOC custody on the aggravated incest count. Although he successfully appealed his convictions, the district court again imposed an indeterminate sentence of fifteen years to life on the aggravated incest count after the second trial.

¶ 11 Defendant asserts in his Rule 35(c) motion (and reasserts on appeal) that his attorney's incorrect advice regarding his sentencing exposure constituted ineffective assistance of counsel.[4] He claims that, had he been granted a hearing, he would have presented evidence that, but for his attorney's erroneous advice, he would have accepted the offer of a determinate ten-year sentence. We agree with defendant that the district court should hold a hearing on this claim.

¶ 12 In summarily denying this claim, the district court reasoned that defendant's assertions "stretch the limits of credulity and make

---

[4] Defendant's opening brief references counsel's "failure to communicate the plea offer." But the claim he raises on appeal alleges that the plea offer was communicated. Counsel's alleged deficient performance was giving inaccurate advice about sentencing possibilities.

no sense." Because the court didn't think it rational that the prosecutor would offer defendant a ten-year determinate sentence after the first trial had resulted in convictions, and didn't understand how defendant's decision to reject such an offer would impact him after the case was reversed on appeal, the court ruled that his claim lacked legal or factual merit.

¶ 13     But we conclude that defendant asserted facts that, if true, would provide a basis for relief under Rule 35(c). *See White v. Denver Dist. Court*, 766 P.2d 632, 635 (Colo. 1988).

### 1.     Ineffective Assistance

¶ 14     Defendant's claim concerning the ineffective assistance prong of the *Strickland* test has two factual predicates: (1) the prosecutor offered a ten-year determinate sentence after the first trial but before sentencing and (2) defense counsel told defendant that the prosecutor's offer wasn't favorable because the most he faced was a fifteen-year determinate sentence.[5]  The district court summarily

---

[5] Defendant also alleges that counsel told him he would win on appeal.  That advice couldn't have been deficient because defendant wound up winning on appeal.

rejected the first factual predicate and therefore didn't address the second.

¶ 15     The district court's assumption that the prosecutor wouldn't have made the post-verdict, presentence offer alleged by defendant lacks support in the record. Post-guilty-verdict plea offers aren't unheard of. And the prosecutor may have had concerns that the verdicts wouldn't hold up on appeal. (As it turns out, any such concerns would have been well founded.) Moreover, it appears undisputed that the prosecutor offered an eleven-year determinate sentence after reversal of the verdicts from the first trial and before the second trial. Thus, we conclude that the district court erred in summarily rejecting this part of the factual predicate for defendant's ineffective assistance claim.

¶ 16     We turn, then, to the second factual predicate — counsel's incorrect advice. If defendant's attorney told defendant the longest prison sentence he could get based on the convictions from the first trial was a determinate sentence of fifteen years, that was incorrect advice: the aggravated incest conviction required an *indeterminate* sentence of at least four years. *See* §§ 18-1.3-401(1)(a)(V)(A), 18-1.3-1004(1)(a), 18-6-302, 18-6-303(3), C.R.S. 2002.

¶ 17    Failure to correctly advise a defendant about his sentencing exposure deprives the defendant of the opportunity to make a reasonably informed decision whether to accept or reject an offer and constitutes deficient performance under *Strickland. See Carmichael*, 206 P.3d at 806 (counsel's failure to tell the defendant that he faced an indeterminate sentence if he went to trial and lost was constitutionally deficient performance).  We therefore conclude that the second factual predicate for defendant's claim can't be summarily rejected.

¶ 18    It follows from all this that defendant alleged facts that, if proved, would entitle him to relief based on ineffective assistance of counsel.

## 2.    Prejudice

¶ 19    In *Carmichael*, the supreme court held that to show prejudice in a rejected plea offer context, the defendant must show a reasonable probability that he would have accepted the offer if his counsel had correctly advised him.  206 P.3d at 807.  Defendant alleged that he would have accepted the ten-year determinate plea offer if his counsel had advised him, correctly, that he faced an indeterminate sentence.  But that isn't the end of the matter.  For

9

*Carmichael* also holds that the remedy — indeed, the only remedy — for ineffective assistance in this context is to order a new trial, before which the parties can perhaps engage in plea negotiations. *Id.* at 809. The court in *Carmichael* expressly rejected the suggestion that "an order for a new trial must be supplemented with a requirement that the prosecution subsequently reinstate the previous plea offer." *Id.* That matters in this case because defendant already obtained a remand for a new trial: after he rejected the alleged plea offer, a division of this court reversed his convictions, putting him in the same position as *Carmichael* requires. So it would seem that under *Carmichael,* defendant wouldn't be entitled to any further relief — that is, the taint of any ineffective assistance has already been removed.

¶ 20    But that isn't the end of the matter either, for *Lafler* and *Frye,* decided after *Carmichael,* have much to say about both the required showing of prejudice in this context and the proper remedy if both *Strickland* prongs are met.

¶ 21    Concerning prejudice, the court in *Lafler* noted that "the defendant who goes to trial instead of taking a more favorable plea may be prejudiced from either a conviction on more serious counts

or the imposition of a more severe sentence." 566 U.S. at 166; *accord id.* at 168. To show that such prejudice occurred, a defendant must demonstrate a reasonable probability not only that he would have accepted the plea offer, but also that "the prosecution would not have withdrawn it in light of intervening circumstances[], that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 164; *accord Frye*, 566 U.S. at 148 ("[D]efendants . . . must also show that, if the prosecution had the discretion to cancel [the offer] or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented.").

¶ 22 The Court's more recent pronouncements on prejudice in the rejected plea context clearly don't fully align with *Carmichael.* The Court requires more from a defendant than does *Carmichael* — specifically, that the defendant show a reasonable probability that the prosecution wouldn't have withdrawn the offer and that the court would have accepted it (at least in states where prosecutors

11

and courts retain such discretion).  This matters to us in Colorado because the prosecution retains the ability to withdraw a plea offer after it has been accepted, in limited circumstances, *see Keller v. People*, 29 P.3d 290, 296 (Colo. 2000) (a prosecutor may withdraw an accepted offer only if the plea agreement calls for an illegal sentence or the defendant materially and substantially breaches the agreement), and the court retains discretion to refuse to accept a plea agreement, *see* Crim. P. 11(f)(5).

¶ 23    So we must conclude that *Carmichael* is no longer good law with respect to the required showing of prejudice in this context. *See Raile v. People*, 148 P.3d 126, 130 n.6 (Colo. 2006) (Colorado state courts must follow Supreme Court precedent on matters of federal constitutional law); *see also People v. Geisendorfer*, 991 P.2d 308, 310-11 (Colo. App. 1999) (holding that prior Colorado Supreme Court decisions had been overruled by a subsequent United States Supreme Court decision); *Alcorn v. State*, 121 So. 3d 419, 422, 429-30 (Fla. 2013) (Florida Supreme Court acknowledged that its prior cases addressing the required showing of prejudice in this context are no longer good law after *Lafler* and *Frye*).

¶ 24　　This brings us to the issue of remedy.  Recall that the court held in *Carmichael* that the only remedy in this circumstance is a new trial; requiring the prosecution to again offer the same plea agreement isn't an option.  But in *Lafler*, the Supreme Court held that requiring the prosecution to re-offer the same deal is an option.[6]  The court addressed two situations in which a defendant rejected a plea offer based on counsel's incorrect advice or failure to communicate the offer to the defendant.

¶ 25　　In the first situation, all the defendant lost was the benefit of a lesser sentence.  If that's the case, "the court may exercise discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between."  *Lafler*, 566 U.S. at 171.

---

[6] In analyzing appropriate remedies, the Court was guided by the principle that the remedy should "'neutralize the taint' of [the Sixth Amendment] violation, while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution." *Lafler v. Cooper*, 566 U.S. 156, 170 (2012) (quoting *United States v. Morrison*, 449 U.S. 361, 365 (1981)).

¶ 26     In the second situation, "resentencing alone will not be full redress for the constitutional injury," such as when "an offer was for a guilty plea to a count or counts less serious than the ones for which a defendant was convicted after trial" or when "a mandatory sentence confines a judge's sentencing discretion after trial." *Id.* In such a situation, (1) the prosecution must re-offer the plea agreement; and (2) if the defendant accepts the offer, the court "can then exercise its discretion in determining whether to vacate the convictions and resentence [the defendant] pursuant to the plea agreement, to vacate only some of the convictions and resentence [the defendant] accordingly, or to leave the convictions and sentence from trial undisturbed." *Id.* at 174; *accord id.* at 171.[7]

¶ 27     By way of providing further guidance, the Court said that in determining how to exercise discretion in these situations the trial court may consider the "defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her actions" and "any information concerning the crime that was discovered after the

---

[7] The Court's approval of certain remedies in the context is obviously at odds with *Carmichael*. It follows that *Carmichael*'s limitation of remedy is no longer good law.

14

plea offer was made." *Id.* at 171-72. But the Court expressly left it open to trial courts to determine how best to exercise their discretion "in all the circumstances of the case." *Id.* at 175.[8]

---

[8] In *Ebron v. Commissioner of Correction*, 53 A.3d 983 (Conn. 2012), the Connecticut Supreme Court identified "possible tension between *Frye* and *Lafler*" in how those cases treat the court's potential acceptance of the plea agreement under the prejudice prong of *Strickland* and the remedy for ineffective assistance. *Id.* at 990-91. On the one hand, *Missouri v. Frye* says that if the trial court learned information after the defendant would have accepted the plea offer that leads the postconviction court to conclude that it isn't reasonably probable the trial court would have accepted the agreement, the defendant hasn't shown prejudice. 566 U.S. 134, 148-49 (2012). On the other hand, *Lafler* says that the postconviction court may consider such information when exercising its discretion to impose a remedy. 566 U.S. at 171-72. So, one might ask, if the postconviction court has decided that any such information would not have caused the trial court to reject the plea agreement, why should the postconviction court be allowed to consider the same information again in deciding on a remedy? *See Ebron*, 53 A.3d at 991-92. "[T]o avoid potentially conflicting findings at the prejudice and remedy stages" of the postconviction proceeding, the *Ebron* court harmonized *Frye* and *Lafler* by concluding that at the prejudice stage the defendant need only establish (in addition to the reasonable probability that he would have accepted the plea offer, and that the prosecution would not have withdrawn it) a reasonable probability that the court would have conditionally accepted the plea agreement. *Id.* at 992. At the remedy stage, the postconviction court may consider any information that came to light after the court would have conditionally accepted the plea agreement in determining the proper remedy. *Id.* at 992-93. In doing this, the *Ebron* court acknowledged that it was providing greater protections to defendants than contemplated by *Lafler*. *Id.* at 990 n.7. As an

¶ 28    Applying *Frye* and *Lafler* to this case, we conclude that defendant has made sufficient allegations of ineffective assistance and resulting prejudice to justify a hearing on this claim.[9]

¶ 29    On remand, following the hearing, the court should answer the following questions:

- Did the prosecutor offer defendant a plea agreement before the first trial?  If not, the claim fails.  If so, what were the offer's terms?

- Were the plea offer's terms legal?  That is, was the plea offer one the court could have accepted in all its material terms?  If, for example, the agreement called for an illegal sentence, then defendant does not establish prejudice.

---

intermediate appellate court, we don't think it's our place to take such an approach.

[9] True, though defendant alleged that he would have accepted the plea offer, he didn't expressly allege that the prosecution wouldn't have withdrawn the offer or that the court would have accepted it. But those omissions are understandable in light of *Carmichael*. And defendant's motion plainly contemplates the consummation of a plea agreement.  Given that the People don't argue that defendant's motion is deficient on either basis, we decline to hold defendant to these technical pleading requirements.  Going forward, however, defendants are on notice that such allegations are part of the pleading burden in the context of a plea offer that the defendant didn't accept.

16

*Cf. Rose v. State*, 304 P.3d 387, 406 (Mont. 2013) (no prejudice if the law did not allow the plea offer). This is so because a court may not impose an illegal sentence, *see People v. Dist. Court,* 673 P.2d 991, 995 (Colo. 1983), and if the plea agreement called for such a sentence, we must conclusively presume that the court wouldn't have accepted it.

- If the plea offer's terms were legal, is there a reasonable probability that defendant would have accepted the offer? If not, the claim fails.

- If so, however, is there a reasonable probability that the prosecution wouldn't have withdrawn it, and a reasonable probability that the court would have accepted the agreement? If the answer to either is "no," the claim fails. If the answer to both is "yes," defendant will have established prejudice, and the court should exercise its discretion to fashion an appropriate remedy.

¶ 30    In determining an appropriate remedy under all the relevant circumstances, the court should consider whether defendant was willing or unwilling to accept responsibility for his actions when the

prosecutor first conveyed the offer. *See Lafler*, 566 U.S. at 171; *State v. Rose*, 406 P.3d 443, 450-51 (Mont. 2017) (affirming the trial court's decision to leave the convictions and sentence undisturbed because the defendant wasn't willing to accept responsibility when the offer was originally conveyed). The court should also consider whether there was any "information concerning the crime" or defendant that came to light after the plea offer was made that bears on the appropriate remedy. *See Lafler*, 566 U.S. at 171-72; *Ebron v. Comm'r of Corr.*, 53 A.3d 983, 993 (Conn. 2012); *People v. Hudson*, 95 N.E.3d 1148, 1152-53 (Ill. App. Ct. 2017) (trial court abused its discretion in declining to give the defendant the full benefit of the plea offer based on its conclusion that it wouldn't have accepted the agreement in light of the defendant's prior convictions; trial court's remedy didn't "neutralize the taint" of the constitutional violation).

¶ 31    In the end, provided the court reaches the question of remedy, the court should ensure that the remedy "'neutralize[s] the taint' of [the] constitutional violation, while at the same time not grant a windfall to the defendant or needlessly squander the considerable

resources the State properly invested in the criminal prosecution."
*Lafler*, 566 U.S. at 170.

### B.    Advice Not to Testify

¶ 32    Next, defendant contends that the district court erred by summarily denying his claim that he received ineffective assistance of counsel when his lawyer advised him not to testify at his second trial.  Specifically, he alleges that, before his second trial, his attorney told him that he would once again succeed on appeal, so he didn't need to testify in his own defense, and that he wanted to testify but relied on his attorney's advice and didn't take the stand.  This prejudiced him, he argues, because he "couldn't explain the incriminating statements, confessions, or admissions" that he had made.  The district court ruled that, although defendant's allegations met the performance prong of *Strickland*, they failed to meet the prejudice prong.

¶ 33    We agree with the district court and conclude that, based on these allegations, defendant wasn't entitled to a hearing on this claim.  To meet the second *Strickland* prong, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Strickland*, 466 U.S. at 694. A defendant doesn't have to set forth detailed evidentiary support for the allegations in his Rule 35(c) motion, *White*, 766 P.2d at 635, but if his claims are merely conclusory in nature and lack supporting factual allegations, the court may deny them without a hearing. *Venzor*, 121 P.3d at 262.

¶ 34 Such is the case here. Defendant didn't make any allegations showing a reasonable probability that the outcome would have been different if he had testified. He didn't indicate what he would have said to the jurors and how that testimony would have influenced their decision. Nor did he say that he would make any such showing if granted a hearing. So the district court didn't err by summarily denying this claim.

C. Failure to Investigate the Victim's History of Being Abused

¶ 35 Lastly, defendant contends that the district court should have held a hearing on his claim that his attorney provided ineffective assistance of counsel by not investigating the case thoroughly. Specifically, he alleges that, because of his attorney's failure to

investigate the victim's history of abuse by others,[10] he wasn't able to provide the jury with context for his incriminating statements to the victim and couldn't strategically attack her allegations. The district court ruled that defendant had failed to make a sufficient showing on either *Strickland* prong, reasoning that defense counsel's choice of how aggressively to challenge a victim's reliability is a matter of trial strategy. *See People v. Bergerud*, 223 P.3d 686, 693 (Colo. 2010) ("On issues of trial strategy, defense counsel is 'captain of the ship.'" (quoting *Arko v. People*, 183 P.3d 555, 558 (Colo. 2008))).

¶ 36    We agree with the district court that defendant wasn't entitled to a hearing on this claim, albeit for slightly different reasons. Defendant made only vague assertions that "had trial counsel properly investigated the accusations [of sexual abuse by others], there is a reasonable probability that the outcome of the case would have been different." He claims that he could have used the results of the investigation to attack the legitimacy of the victim's

---

[10] Defendant's motion identifies other areas that his attorney failed to adequately investigate, but he mentions only the victim's "history of abuse" on appeal.

21

allegations, but he doesn't explain how, even if his attorney had investigated the victim's other abusers, that information would have been admissible at trial. Because of Colorado's rape shield law, it would have been difficult, if not impossible, to introduce such evidence. *See* § 18-3-407, C.R.S. 2018 (at trial, subject to few exceptions, evidence of a victim's prior or subsequent sexual conduct is presumed irrelevant). His motion doesn't allege any facts indicating that some exception to the law would have applied.

¶ 37 Nor did defendant explain what this history involved or how it would have impacted the case, if admitted. Again, conclusory statements, without supporting factual allegations, aren't enough. *Venzor*, 121 P.3d at 262. The district court properly denied this claim.

## III. Conclusion

¶ 38 We reverse that portion of the district court's order summarily denying defendant's claim that he received ineffective assistance of counsel because his attorney incorrectly advised him about his sentencing exposure, and we remand for a hearing on that claim. In all other respects, we affirm the order.

JUDGE TERRY and JUDGE GROVE concur.